## TOWN OF BUFFALO v. WALKER et al. (NEWKIRK et al., Interveners).

No. 15090. Opinion Filed April 28, 1925.

Rehearing Denied July 5, 1927.

**1. Appeal and Error—Parties Entitled to Review.**

Where no judgment is rendered by the trial court in favor of or against an intervener and no order made as to him in a judgment rendered in the main action, his rights cannot be determined on appeal to this court from said judgment.

**2. Same—Third Parties not Brought in.**

Where it is contended that the rights of innocent third parties are involved in an action and they are not made parties to the action, their rights cannot be determined in the trial court nor by appeal to this court.

**3. Municipal Corporations — Bond Issue— Validity of Sale.**

Where the city council, or trustees, of a municipal corporation in this state, undertakes to sell, or contracts to sell, the bonds of said municipal corporation, issued by a vote of the people, for any sum less than par with accrued interest added, and exchanges the same for labor and material for the building of the public improvement for which said bonds were voted, such exchange is unlawful, for the reason that it is in conflict with section 4281, Comp. St. 1921, which provides that such bonds shall not be sold for any sum less than par with accrued interest added, and that if sold through an agent, that after the commission is deducted from the amount received from said bonds there must still remain in the treasury a sum equal to par value and accrued interest.

**4. Same—Sale of Bonds at "Par."**

"Par" means equal, and "par value" means a value equal to the face of the bonds. A sale of bonds at par is a sale at the rate of a dollar in money for a dollar in bonds. This is the accepted meaning of the term in the mercantile world. which the legislature is presumed to have adopted in enacting the statute.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Harper County; Arthur G. Sutton, Judge.

Action by the Town of Buffalo, Okla., against R. Y. Walker et al; B. F. Newkirk and another intervening. Judgment for

defendants. Plaintiff brings error. Reversed.

O. C. Wybrant and D. P. Parker, for plaintiff in error.

Geo. P. Glaze, for defendants in error B. F. Newkirk and C. H. Taylor.

Opinion by THOMPSON, C. This action was commenced in the district court of Harper county, by the town of Buffalo, Okla., a municipal corporation, plaintiff in error, as plaintiff, against R. Y. Walker, C. E. Mc-Minn, as town treasurer of the town of Buffalo, B. F. Willett, B. C. Krause, Tom Ricker, L. R. H. Durham, C. M. Anderson, W. D. Drake, G. W. Messinger, T. C. Mc-Elhiney and H. C. Bayne, composing the excise board of Harper county, Okla., defendants below, and B. F. Newkirk and C. H. Taylor, interveners, all defendants in error, to cancel $200.000 bonds against said town, together with coupons, and to enjoin the levying and collecting of any tax upon the taxable property of said town for the purpose of paying said bonds, or any part thereof, or any interest thereon, or to create a sinking fund for the purpose of paying for said bonds, and for costs.

The parties will be referred to in this opinion as plaintiff, defendants, and interveners, as they appeared in the lower court.

Plaintiff's amended petition, among other things, alleged, in substance, that the board of trustees of the town of Buffalo, in the year 1917, after the same had been submitted to and voted for by the qualified electors of the town of Buffalo, issued $100,000 in bonds for the construction of waterworks, electric lights, and sewer system to be owned by said town and turned the same over, under contract, to the defendant R. Y. Walker, for which he was to construct said improvements; that nothing was ever done under said contract and that the town had never received any consideration for said bonds; that, in 1921, the sum of $260.000 in bonds was voted by the qualified electors of the town of Buffalo, for the purpose of erecting a system of waterworks in said town. said bonds being in the denomination of $1.000 each and numbered from one to 260, inclusive, and issued dated January 1, 1921, and it appears, upon the face of the bonds, that they were issued for the purpose of constructing waterworks improvements; that said bonds were issued to bear six per cent. interest per annum, payable semi-annually, on March 1st and Septemebr 1st of each year, and in said bonds the full faith and credit of the town were pledged for the payment of same; that said bonds were never

sold by said town at par and accrued interest, but that the trustees of said town, by a written contract dated February 21, 1921, contracted with defendant R. Y. Walker, who, for the consideration of the entire issue of the bonds, was to build the system of waterworks and furnish, at his own cost and expense, all the material and labor, plans and specifications for the building of said system of waterworks, the town to furnish the site, building site, rights of way, engineer and inspector, at its own cost and expense; that the defendant R. Y. Walker was to surrender his former contract and to return to the town the $100,000 in bonds, issued in 1917, which had been delivered to the defendant Walker, and that, in the event any part of the said $100,000 bonds were not surrendered, the said Walker was to execute an indemnity bond to the town to insure it against loss for any amounts of said bonds not surrendered; that $5,000 from the sale price of the $260,000 bonds was to be set apart for engineering and incidental expenses and any part remaining of the $5,000 was to be expended for the benefit of the town for the distribution of water in the town; that said bonds, upon their face, were made payable on the 1st day of January, 1946, or 25 years from date; that the defendant R. Y. Walker was the contractor, to whom was turned over the entire issue of $260,000 in bonds; that the defendant C. E. McMinn was the town treasurer of the town of Buffalo, who turned over said bonds to the said contractor, R. Y. Walker; that the defendants B. F. Willett, B. C. Krause, Tom Ricker, L. R. H. Durham, C. M. Anderson, W. D. Drake, G. W. Messinger, T. C. McElhiney, and H. C. Bayne compose the excise board of Harper county, Okla.; that said excise board was threatening to and was about to make an assessment and levy a tax upon the taxable property within the town limits of Buffalo, for the purpose of paying the interest accrued, and that accruing upon the bonds, and to create a sinking fund for the purpose of paying for said bonds at maturity; that said bonds and each and all of them, and said interest coupons, attached to said bonds, were in all respects wholly void, and constitute no obligation or charge against the town of Buffalo or upon the taxable property of the residents thereof; that said bonds should be declared void and without force and effect, and should be surrendered and canceled as being wholly void and without force and effect, and that the defendant R. Y. Walker, or any other person claiming said bonds by, through, or under him, should be required to surrender the same into court for can-

cellation, and the excise board should be restrained from making any levy or assessing any tax upon the taxable property within the limits of the town of Buffalo for the purpose of paying said bonds or any part thereof or any coupons attached thereto. A copy of one of the bonds, together with one of the coupons and the written contract between the board of trustees of the town of Buffalo and the defendant R. Y. Walker is attached as an exhibit and made a part of the petition.

The defendant R. Y. Walker admitted the issuance of the bonds and the contract, and alleged that he received the bonds in the total sum of $260,000 as a consideration for the construction and completion of said waterworks system; that he complied with said contract, completed the waterworks system, and turned the same over to the town of Buffalo in May, 1922, and the same was accepted by said town, and that the town used said waterworks, passed ordinances for water charges, sold water and collected therefor, and used the same for municipal purposes; that the trustees and citizens of said town knew of the construction of said waterworks, knew of the contract, and stood idly by and permitted the work to proceed to the completion of the waterworks, and that said waterworks were reasonably worth the par value of the bonds and accrued interest; that the bonds were delivered to him and sold by him, and that the proceeds from said sale were used in the construction and cost of said system, and alleged that the said town was estopped from raising the question as to the validity of the contract and the sale of the bonds; that he had sold said bonds and they were now in the hands of innocent purchasers for value without notice of any infirmity, and that none of said bonds were now in his possession or control; and denied that the amended petition contained any equitable grounds for the relief prayed for, and denied that the plaintiff was entitled to any relief, either in law or in equity, and prayed that plaintiff be barred from introducing proof on all matters to which the defense of estoppel was pleaded, and that plaintiff take nothing by its amended petition, and that he be given and granted all relief, both legal and equitable, to which the court might find him to be entitled.

The plaintiff filed a reply to the answer of defendant R. Y. Walker in the nature of a general denial.

The defendant C. E. McMinn, town treasurer, answered, denying that he was a party to the contract and that he took any part in the alleged sale of the bonds, but admitting that he turned over the bonds to the defendant R. Y. Walker under the direction of the town board under a resolution passed by said board, but that he did so under protest; that the only connection he had with the transaction was in a ministerial capacity, and that he stood ready and willing to obey any judgment, order, or decree of the court, made in the cause.

B. F. Newkirk filed his amended petition in intervention, claiming that he was the owner and holder of 24 coupons, maturing in 1922 and 1923, which were issued for interest upon certain of the bonds for the sum of $30 each, or a total sum of $720; that he purchased said coupons for value without notice of any infirmity in the title to said coupons, or the bonds to which they were attached, or without any knowledge that the town of Buffalo had disposed of said bonds without authority of law, as claimed by the plaintiff; that said bonds had been sold upon the open market in the United States, and that he had obtained title thereto through said market; that, if the plaintiff should prevail, he would suffer loss or more than $700 on said coupons; that he was in no manner indebted to the town of Buffalo, and that the repudiation by said town would be a denial of its just, honest, and lawful obligation, incurred in securing public improvements for which said bonds were authorized to be issued. Said petition of intervention is duly verified and the coupons attached as exhibits.

The intervener C. H. Taylor, in his petition of intervention, alleged that he was the owner of ten of the bonds of the denomination of $1,000 each, numbered from 33 to 42, inclusive; that there was $300 interest past due upon said bonds; that he was a purchaser of said bonds in good faith and for value and without any knowledge of any illegality in the issuance of same or infirmity or question whatsoever as to the title to the same; that he acquired said bonds from the treasurer of the town of Buffalo in exchange for a like amount of bonds theretofore issued by the town of Buffalo, under date of March 1, 1917, which he had purchased in the month of March, 1917, and through contract with its officials he surrendered $10,000 of said bonds and received in lieu thereof $10,000 of the $260,000 issue; that, if said bonds were canceled he would suffer an irreparable loss, and prayed that the injunction be denied, and that the excise board be compelled to make sufficient levy to pay the interest coupons with interest thereon at six per cent. from

the time they fell due until paid, which petition of intervention is duly verified.

To the petitions of intervention the plaintiff filed separate answers, which are the same in each case, denying generally the allegations of said petitions of intervention and setting up practically the same allegations contained in the amended petition against the defendants, and alleged further that the waterworks system did not cost the sum of $260,000, but, in truth and in fact, cost only about the amount of $70,000 and that the interveners purchased said bonds and coupons, described in their petitions of intervention, with full notice and knowledge of all the facts and circumstances of the entire transaction as would put an ordinarily cautious and prudent person upon inquiry, and that such inquiry, if pursued with ordinary diligence, would have led the interveners to the foregoing facts and circumstances set forth in the pleadings in this cause, and that by reason thereof said interveners were not innocent purchasers of the bonds and coupons for value and without notice of said infirmities and before maturity thereof, and prayed that the prayers of their petitions be denied.

Upon these issues the cause was tried to the court without the intervention of a jury, and at the close of all the evidence the court found that:

"The municipal bonds, mentioned in the petition, are negotiable instruments and that the same may be exchanged for work and labor of the kind and character performed by the defendant Walker and that the prayer of plaintiff's amended petition be denied and refused"

—but denied motion made by interveners at the close of the case for an order of court to compel levy and collection of taxes to pay their interest coupons and provide a sinking fund to pay the bonds at their maturity.

Motion for new trial was filed, heard, and overruled; exception reserved by plaintiff, and the cause comes regularly upon appeal by the plaintiff from said judgment.

Attorneys for plaintiff present and argue nine grounds of error for reversal of this case, but, in our view of the case, only the first and ninth are important to a decision as presented by the record, which are as follows:

"No. 1. The contract entered into between the board of trustees of the town of Buffalo and R. Y. Walker whereby said town attempted to barter to said defendant (Walker) waterworks bonds in the total sum of $260,000 in return for a waterworks plant

and return of other bonds for which defendant R. Y. Walker had paid no consideration, is, upon its face, illegal and void, and that the title to the bonds and coupons involved in this case did not pass from the town of Buffalo by said alleged contract, nor is the contract in question capable of ratification."

"No. 9. That the court erred in refusing to allow the plaintiff in error to show by sufficient and competent evidence, that the total cost of the construction of the waterworks plant was the sum of $92,446.65."

The attorneys for plaintiff have filed their brief and reply brief.

The attorneys for the interveners, B. F. Newkirk and C. H. Taylor, have filed answer brief.

The defendants, R. Y. Walker, the contractor, and C. E. McMinn, town treasurer, and the members of the excise board of Harper county, Okla., have filed no briefs in this court, and the members of the excise board have filed no pleadings in the cause.

The only owners of the bonds or coupons that are parties to this action are B. F. Newkirk, who owns $720 of the coupons, and C. H. Taylor, who owns $10,000 of the bonds, and upon examination of the judgment of the trial court, appealed from in this case, there is no finding of the court in favor of the interveners on their petitions of intervention, and no determination of their rights as such owners. The owners of the balance of $250,000 of the bonds are unknown, and are not parties to this action, and their rights cannot be adjudicated in this action, as they are not before the court. As heretofore stated, there being no judgment either granting or denying the prayers of the petitions in intervention of Newkirk and Taylor in the judgment appealed from, this court is powerless to grant them any relief on this appeal, as the judgment of the lower court did not, in any way, pass upon their claims on their petitions in intervention. The court, as shown by the record, refused specifically the request of the interveners, Newkirk and Taylor, to make an order directing the excise board to make a levy against the taxable property of the town of Buffalo to pay the interest and sinking fund and to pay the coupons owned by them, as claimed in their petitions in intervention, and, therefore, their rights are not properly before us for determination.

In the answer and in the testimony of R. Y. Walker it is disclosed that he has no further interest in the bonds, and, in effect, he disclaims any further interest in the bonds or coupons.

The undisputed evidence, shown by the tes-

timony of witnesses and the agreed statement of facts, made by the attorneys at the trial, is that the town of Buffalo is a municipal corporation; that, in March, 1917, by vote of the qualified electors of said town, $100,000 in bonds was authorized for the construction of waterworks, electric lights, and sewer system; that these bonds were not sold for cash, but turned over to the defendant R. Y. Walker, for which he was to build said waterworks, light, and sewer system, but this contract was never preformed and the town never received any consideration therefor; that, in 1921, the town of Buffalo, through its qualified electors, voted $260,000 in bonds for the purpose of constructing a system of waterworks; that said issue was duly approved by the Attorney General, and the certificates of the county attorney, the county clerk, and the treasurer of the town of Buffalo, and the Attorney General were attached to each of the bonds in conformity with the statutes of the state of Oklahoma; that said bonds were issued on the first day of January, 1921, in the sum of $1,000 each, and numbered 1 to 260, consecutively and inclusively, falling due on different dates as follows: Bonds from No. 1 to No. 65, consecutively, due on January 1, 1931; bonds from No. 66 to No. 135, consecutively, due on January 1, 1936; bonds from No. 136 to No. 200, consecutively, due on January 1, 1941; bonds from No. 201 to No. 260, consecutively, due on January 1, 1946, bearing six per cent. interest, payable semi-annually, and placed in the care, custody, and control of the defendant C. E. McMinn, town treasurer of the town of Buffalo; that said bonds were never sold for cash, but, under resolution of the board of trustees of said town, the said town treasurer was ordered to turn the entire issue over to defendant R. Y. Walker, under a written contract to build the waterworks system, the terms of which have heretofore been set out in this opinion. in the statement of the case; that R. Y. Walker erected and installed the waterworks plant, and that the town of Buffalo received no other or further consideration for said bonds other than the waterworks plant; that the attorneys for the town of Buffalo, at the trial of the cause, offered to show and prove by John W. Carl, the superintendent and paymaster for defendant Walker in the construction of the waterworks, that he made all the payments for work, labor, and material, and that he was in possession of all the checks and stubs, by which said payments were made, and that the total amount of the cost of said waterworks was $92,446.-

65 and that R. Y. Walker received the entire bond issue of $260,000, which offer was refused, over the objection of interveners and exception reserved by plaintiff; that the bonds provided for the collection of an annual tax to provide for the payment of interest and for a sinking fund to pay the principal at maturity; that the town is using the waterworks for municipal purposes, and collecting water rents from users of the same, and is in possession and control of the same, although no official acceptance appears upon the minutes of the proceedings of the board of trustees.

If the rights of the parties were confined to the plaintiff and the defendant R. Y. Walker, the contractor, to whom the bonds were delivered, the decision of this case would be very simple. In our opinion, the delivery of the bonds, under the written contract in this case, to R. Y. Walker in exchange for a system of waterworks to be built by him was in violation of section 4281, Comp. St. 1921, which is as follows:

"It shall be unlawful for any board of county commissioners, city council or city commissioners, town council, township board, school district board, board of education or any other officer of any such municipal corporations, or any officer of any other political corporation, or subdivision of this state, to sell, agree to sell or contract to sell any bonds issued by a vote of the people for any sum less than par with accrued interest added, and any and all commission allowed any firm, person or corporation for the sale of such bonds must, after being deducted from the sum total for which said bonds are sold, leave in the treasury the sum equal to the par value and accrued interest thereof."

The above quotation makes the exchange of the bonds, conducted as it was in this case, unlawful, for the statute uses this language, that the bonds must not be sold "for any sum less than par with accrued interest added," and further says that if a commission is allowed upon the sale of the bonds, it must, "after being deducted from the sum total for which said bonds are sold, leave in the treasury the sum equal to the par value and accrued interest thereof." In the instant case, the bonds were not sold for any "sum." There was no "sum" ever deposited in the treasury to "leave in the treasury," and if the plaintiff had been permitted to show and prove that the cost of the waterworks, which it received in exchange for the entire $260,000 issue, was only $92,446.65, or a little over one-third of the par value of the bonds and accrued interest, or to put it in another way,

the value of the waterworks deducted from $260,000 leaves a difference of $167,553.35, for which the town of Buffalo received no consideration whatever, it would necessarily follow that the town did not receive par and accrued interest either in money or property. The $100,000 of the bond issue of 1917 must not be considered, as these bonds were returned and canceled and the defendant Walker performed no services nor did the town receive any benefits from the issue.

In the case of Village of Ft. Edwards v. Fish (N. Y.) 50 N. E. 973, in defining the words "par value," the court said:

" 'Par' means equal and 'par value' means a value equal to the face of bonds. A sale of bonds at par is a sale at the rate of $1 in money for $1 in bonds. This is the accepted meaning of the terms in the mercantile world which the Legislature is presumed to have adopted in enacting the statutes."

Our statute, above quoted, says that the full amount of par and interest must be in the treasury, and we are unable to see how material, labor, or waterworks improvement could be deposited in the treasury. The trustees were not acting within the scope of their authority. There is this difficulty in the way of sustaining this contract: The bonds were exchanged for property, in value a little over one-third of the par value of the bonds, and in the case of Delafield v. State of Illinois, 2 Hill's Reports, pages 159-172, in passing upon this identical question, par value, the court defined it to mean:

"This can, I think, mean nothing else than pound for pound, or dollar for dollar."

And further in the opinion, it is said:

"This is not a question about the par of exchange, * * * and if that does not mean in this case a dollar in money for every dollar of security, the wit of man cannot tell us what it does mean."

These words cannot mean at par with the work of the contractor or at par with the material furnished, because the value of these things is uncertain and rests only in opinion and agreement. · Such a construction would deprive the words "at par" of all definite meaning. Gold and silver, or their legal equivalent, are necessarily the only standard by which the value of municipal bonds may be measured. It would be a dangerous precedent to set, to permit the officers of municipality to trade and exchange bonds of municipality for work, labor, material, or improvements, and it is our opinion that the Legislature meant, when it said that it shall be unlawful for such officers to sell bonds for any sum less than par with accrued interest, that this must be for cash.

Section 5065, Comp. St. 1921, defines what contracts are unlawful as follows:

"Those contracts are unlawful which are: First. Contrary to an express provision of law."

This contract between the trustees and R. Y. Walker, in our opinion, is contrary to the express provisions of law, and is made a criminal offense under section 4282, Comp. St. 1921, and cannot be too strongly condemned, as the contract for the exchange of these bonds results in fastening upon a small municipality, consisting of a population of 479, as shown by the United States census, a debt of $260,000, for which it has received $92,446 65 in property, and fastening a total indebtedness of over $540 on each individual in said town.

The Territorial Supreme Court, in the case of Bass v. Smith et al., 12 Okla. 485, 71 Pac. 628, said:

"The contract which is attempted to be enforced in this action is not only in violation of the organic act of this territory, which denounces such an act as a crime, but it is also in violation of the laws of the United States. It is therefore illegal. And the law seems to be now well settled that no action, either at law or in equity, can be maintained on a contract that is forbidden by law. The sound policy of the law seems to be to leave the parties in all such cases without a remedy, since the courts will not lend their aid to a party who bases his action on a contract in violation of the organic law or the statute, or upon an act that is immoral, or is in contravention of sound public policy. No legal right can arise from such a source. (Garst v. Love, 6 Okla. 46; Light v. Conover, 10 Okla. 732; Trist v. Child, 12 Wall. 441; Meguire v. Corwine, 101 U. S. 108; McCullen v. Hoffman, 174 U. S. 639)." See also A. T & S. F. R. Co. Holmes, 18 Okla. 92, 99 Pac. 22; Prince v. Gosnell, 19 Okla. 175 92 Pac. 164; Binswonger v. Stanford, 28 Okla. 429, 114 Pac. 621; Boikoshe Coal Co. v. Morehead, 34 Okla. 424, 126 Pac. 1033.

This principle runs through all the authorities, that the courts will not lend their aid to the enforcement of a claim founded upon a violation of the law.

We have examined the authorities cited by attorney for the interveners from Nebraska, Wisconsin, Washington, Montana, and elsewhere, and we find that the authority to sell the bonds, in the statutes construed in the cases cited, has no such restrictions as those contained in our statute. Under the statutes construed the officials are empow-

ered to sell the bonds in such manner as they shall deem for the best interests of the city, or exchange them for work and material.

From the foregoing authorities, and under the facts and circumstances of this case, we are clearly of the opinion that the court committed error in refusing to permit the introduction of the testimony as to the cost of the waterworks as against the defendant R. Y. Walker, and we are further clearly of the opinion that the court committed error in holding that the bonds in this case could be legally exchanged for work and labor of the kind and character as that performed by the defendant R. Y. Walker, for the reason that said exchange is clearly against the meaning and intent of the law, and is contrary to the law and against public policy.

We are, therefore, of the opinion that the judgment of the lower court is erroneous for the reasons, first, in refusing to admit the evidence complained of, and, second, in finding that the exchange of the bonds, under the written contract in this case, should be upheld. It follows then that the judgment of the trial court should be and is hereby reversed and remanded with directions to the trial court to vacate its judgment and take such furtther proceedings not inconsistent with the views herein expressed as shall be necessary to a determination of the equities and rights of the intervening parties to this action in the trial court; this, however, without prejudice to the rights of interested parties, not before the court

By the Court: It is so ordered.

Note.—See under (1) 3 C. J. p. 598, §440. (2) 4 C J. p. 698, §2604. (3) 28 Cyc. p. 1598. (4) 29 Cyc. p. 1556; 30 Cyc. p. 799; 36 Cyc. p. 1135.