## TOWN OF OKARCHE v. CONNELLY BROS., Inc.

No. 25077.   Nov. 12, 1935.

Rehearing Denied Dec. 10, 1935.

Stuart, Bell & Ledbetter, for plaintiff in error.

Fogg & Fogg, for defendant in error.

RILEY, J.   This is an appeal from a judgment obtained by defendant in error, herein referred to as plaintiff, against the town of Okarche for an alleged breach of contract for the construction of a waterworks system for said town.

On May 18, 1931, there was executed between plaintiff and defendant a written contract whereby plaintiff agreed to furnish all necessary tools, machinery, equipment, labor, and material and construct a water system for defendant in full accordance with plans and specifications adopted and on file in the office of the town clerk, which plans and specifications were referred to and made part of the contract.

The contract provided that plaintiff should begin work within ten days and complete the entire project within 60 days "after the money is available."

In consideration thereof defendant agreed to pay for the entire work the sum of $46,200, "subject to sale of bonds."

Plaintiff alleged that at all times after the execution of said contract it was ready, will-

ing, and able to comply with the terms thereof, but that defendant had breached said contract, in that it notified plaintiff on or about August 3, 1931, that it would not permit plaintiff to proceed with its contract, and had by resolution, duly enacted, canceled said contract.

Judgment was prayed for in the sum of $11,609.57, alleged to be the difference between the contract price of said improvement and the cost thereof to plaintiff. This was by amended petition reduced to $6,035.38.

Defendant answered by general denial, but admitted the execution of the contract. It alleged in substance that plaintiff had induced the execution of said contract by the mayor and town clerk by an agreement or representation that plaintiff had obtained and would produce a purchaser ready, willing, and able to take and pay for the bonds mentioned in the contract (bonds authorized by an election) at a price agreed upon between plaintiff and defendant, and that plaintiff would deposit with the town clerk a certified check in the sum of $1,000 to guarantee that it would furnish and produce a purchaser for said bonds at such price. That plaintiff never had and never did produce or furnish such purchaser, and never did deposit such check, and had no intention so to do at the time it made such agreement or representation; that because of the fraud so practiced, the contract sued upon never did become binding upon said town; that after the expiration of a reasonable time and on account of the failure of plaintiff to comply with such agreement or representation, defendant notified plaintiff that it would not be liable upon said contract.

Defendant further alleged that plaintiff had included in said contract the sum of $2,250 for a discount or loss in handling said bonds, and said $2,250 was agreed to be no part of the price of the construction of said water system, and that by reason thereof plaintiff was not entitled to recover any sum, but that in the event defendant should be held liable under said contract, then the $2,250 should be deducted from said contract price.

Reply was by general denial.

Trial was had to a jury, resulting in a verdict and judgment for plaintiff in the sum of $1,517.69, from which judgment defendant appeals.

The record shows that an election was held in the town of Okarche at which the town was authorized to incur indebtedness and issue bonds in the sum of $50,000 for the purpose of constructing a water system to be owned exclusively by said town.

After the bonds were authorized, the town advertised for bids on the bonds and also for bids for the construction of the water system. Both sets of bids were to be opened by May 11, 1931. Six bids on the construction job were received. Two bids were filed for purchase of the bonds, but both were rejected. Consideration of the construction bids was passed, and re-advertisement for bids on the bonds was ordered, to be received May 25, 1931.

Upon further consideration of the bids for construction of the water system the bid of Connelly Brothers appears to have been accepted, and the contract sued upon was executed on May 18, 1931.

The specifications called for alternative bids.

The bids of Connelly Brothers were No. 1, $43,121.25; No. 2, $42,124.25. How the contract was raised to provide for payment of $46,200 does not clearly appear, but one witness attempts to explain it by saying that an extra storage tank of some kind was added after the bid was opened.

There is some evidence indicating that there was some doubt as to whether the bonds would sell. This is shown by the provision in the contract that it was made "subject to sale of the bonds."

Discussion was had between the officers of the town and Connelly Brothers, or their representative, on this question.

R. H. Hunter, chairman of the town board, testified in part:

"Q. Why, Mr. Hunter, at the time that this contract was signed that is sued on, herein, I will ask you to state whether or not prior to the time it was signed, anyone stated for the plaintiff that it had a purchaser ready, willing and able to take the bonds. * * * A. All right. Mr. Andy Connelly told the officers of the town board that if he was awarded that contract, that he would take those bonds, the first twenty-five thousand of them at five and one-half per cent. and the last twenty-five thousand of them at six per cent. on the 25th day of that month; that's exactly what he said. * * * Q. Why, all right, Mr. Hunter, did you see them on the 25th? A. Yes, sir. Q. Well, did he appear there on the 25th? A. A representative of his appeared. Q. Well,

240

Who was it? A. Charlie Nail. Q. Charlie Nail; who was with him? A. I think Ray Murray was with him? Q. Ray Murray? A. Yes, sir. Q. Was there one of the Connellys there? A. He was a representative of the Connellys. Q. But, did you see any one of the officers there? A. Of Connelly Brothers? Q. Yes, sir. A. No, sir; not that I know of. Q. I will ask you to state whether or not, at the time when you did see him, Mr. Hunter, whether or not anything was said by any officer of the Connelly Brothers as to whether or not there was included in the bid a discount or amount to cover loss on the sale of the bonds? A. Yes, sir. * * * Q. What did he say, Mr. Hunter; what was said, Mr. Hunter? A. He said—(interrupted) Q. Which one was it, now, which one was it that made the statement? A. Mr. Andy Connelly; he said that the discount on those bonds would be $2,250. Q. All right; and did he say how it was covered; did he say? A. It was added into his bid. Q. It was added into his bid? A. Why, certainly. Q. Yes, sir. Now, that was a discount on the sale of the bonds, on the handling of the bonds? A. Yes, sir."

In this he was corroborated by the testimony of other members of the board and the town clerk, and to some extent by witness for plaintiff.

On May 25th, when bids on the sale of the bonds were to be opened, C. H. Nail, who testified that he was interested with Connelly Brothers in the contract, appeared and submitted a bid on the bonds at par with accrued interest on bonds to bear 5½ per cent. interest on the first $25,000 and 6 per cent. on the second $25,000. He enclosed a check for $1,000 to be held as a forfeit, and to be applied upon the purchase price of the bonds delivered to him. This was his personal check and was not certified.

Objection was raised to opening the bid for the reason that the check was not certified as required in the call for bids. Thereupon Nail explained that the bid was made out after banking hours, and that the personal check would be replaced the next morning by Connelly Brothers with certified check to "accompany this proposal of their bid."

One other bid was filed, but there was no check with it.

Consideration of the bids was postponed until the next day at 10 o'clock a. m. At that time no certified check was furnished by either bidder and both bids were rejected, and sale of the bonds under the second advertisement for bids failed.

There is some evidence to the effect that notwithstanding the rejection of the Nail-Connelly bid for purchase of the bonds, the officers of the town made several trips to Oklahoma City in an effort to induce Connelly Brothers to put up a certified check and take the bonds under the bid, but the efforts failed, and on July 30, 1931, the town board took proceedings for a third advertisement for bids for the bonds, bids to be received on August 17th. On that date one bid was filed by the Bank of Okarche, and the bonds were sold to it.

On August 3d, resolution was passed by the town board canceling the contract with Connelly Brothers and notice thereof sent to Connelly Brothers by registered mail.

New bids for the construction of the water system were advertised for to be opened August 24th. On that date several bids were received and contract was awarded to another contractor. Connelly Brothers did not bid that time.

It will thus be seen that there is evidence tending to prove that Connelly Brothers promised the town board, or its members, that if it was awarded the contract it would buy the bonds and furnish a bidder ready, willing, and able to buy the bonds.

There is also evidence, and this appears to be uncontradicted, that there was included in the bid of Connelly Brothers, and carried into the contract, an item of $2,250 representing a discount on the bonds, or expense of that amount in handling the bonds. There is no direct evidence that this sum was added to the bid of Connelly Brothers after the bid was originally submitted at the maximum sum of $43,121.25, or that said "discount" as such was included in the difference between the bid and the contract.

The defendant requested and the court refused the following instruction:

"If you find from the evidence that there was included in the bid of plaintiff, based on which the alleged contract herein sued on is alleged to have been executed, the sum of $2,250 for loss or discount on the bonds of the defendant issued for the building of the waterworks at Okarche, you are instructed to return a verdict for the defendant."

The court instructed the jury:

"* * * If you find from the evidence there was included in the alleged contract price of $46,200 the sum of $2,250 for discount for handling the defendant's bonds, you will consider this as a part of the construction

costs and deduct it together with the actual cost of construction from the contract price of $46,200 in determining what, if any, profit the plaintiff would have made in the performance of the contract."

In Town of Buffalo v. Walker et al., 126 Okla. 6, 257 P. 766, it is held that where the town trustees undertake to sell the bonds of the municipal corporation for any sum less than par with accrued interest added, and exchange the same for labor and material for the building of public improvements for which the bonds were voted, such exchange is unlawful and void as being in violation of section 4281, C. O. S. 1921, which provides that such bonds shall not be sold for any sum less than par with accrued interest added, and if sold through an agent after the commission is deducted, there must still remain in the treasury a sum equal to par value and accrued interest, which is held to mean a sum equal to the face value of the bonds with accrued interest added.

So that, if there was, in this case, an agreement that the bid of plaintiff should include a discount in the sale of the bonds, in the sum of $2,250, the contract awarded upon said bid would be void. If the contract was executed with the understanding that plaintiff was to buy the bonds ostensibly at par with accrued interest, but in fact at a discount, not to be reflected in the bid for the bonds, but to be included in the contract, whether the same was included in the original bid for construction of the works or added after the bid was opened, to cover the "discount" or loss to plaintiff in handling the bonds, the whole transaction was void.

There can be but little, if any, doubt under the evidence that there was included in this transaction, somewhere, a discount on the sale of the bonds, or a "loss to plaintiff in handling the bonds," the sum of $2,250.

It may be that plaintiff had in mind the purchase of the bonds at the time its original bid for the construction of the works was made and submitted, and that if it did purchase the bonds at par and accrued interest, it would be obliged to sell the bonds at a discount of $2,250, and to cover the anticipated loss on the sale of them, it included in its original bid the sum of $2,250, not as a part of the actual cost to it in constructing the works, but to cover such loss on the bonds. But if after the construction bid was submitted, it appeared likely that the bonds would not sell at par, and plaintiff then proposed to buy the bonds or furnish a bidder who would buy the bonds at par with accrued interest, and then raised its bid $2,250 and added that sum in the contract, then the whole transaction was void, for the reason that the sale of the bonds to plaintiff would not in fact have been for par and accrued interest and would have been at a discount in the sum of $2,250.

As stated before, it is not clear from the evidence just when this $2,250 was added to plaintiff's bid, whether before it was submitted or at the time the contract was executed.

If it was after the bid was submitted and opened, and from the evidence the jury might have inferred that it was, and the contract was drawn to include the $2,250, then the whole transaction was void as an attempt to sell the bonds in violation of law, and plaintiff was not entitled to recover anything, and the jury should have been so instructed.

While the instruction by defendant, refused by the court, was not technically correct on this phase of the case, it was sufficient to call the court's attention to the question involved.

There are other questions raised by defendant, but we deem it necessary to notice but one.

Defendant was permitted to put in evidence the testimony of W. J. Aycock, concerning a transaction between Aycock and plaintiff relative to the sale of the bonds, to the effect that Aycock stood ready, willing, and able to buy the bonds. This was objected to as being incompetent and hearsay. The evidence given by Aycock was clearly hearsay and should not have been admitted.

The judgment is reversed and the cause is remanded, with directions to grant a new trial.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY and GIBSON, JJ., concur.