ELGIN–BUTLER BRICK & TILE CO. v. HILLSBORO INDEPENDENT SCHOOL DIST. (No. 8001.)

(Court of Civil Appeals of Texas. Dallas. June 29, 1918. Rehearing Denied Oct. 26, 1918.)

SCHOOLS AND SCHOOL DISTRICTS &⁓80(1)—AUTHORITY OF SCHOOL BOARDS—RATIFICATION.

The act of two members of a school board in promising to procure a guaranty from the board of a materialman's bill for brick used in the construction of a school building was not binding on the board, it never having been ratified in regular session.

Appeal from Hill County Court; R. T. Burns, Judge.

Action by the Elgin-Butler Brick & Tile Company against the Hillsboro Independent School District. Judgment for defendant, and plaintiff appeals. Affirmed.

Dupree & Crenshaw and Walter Collins, all of Hillsboro, for appellant. Wear & Frazier, of Hillsboro, for appellee.

RAINEY, C. J. Appellant sued appellee to recover $291.49 on an alleged contract for brick furnished the board for the erection of a school building. Appellee denied hav-

ing bought the brick, or any responsibility therefor. A trial before the court without a jury resulted in a judgment for appellee, from which this appeal is taken.

The school board contracted with Da Moth & Rose to erect a school building in said district. The contractors were to furnish all the material, and, in case they failed from any cause to complete it, the school board would have the right to take possession of all unused material, tools, etc., on hand and to complete the building. Da Moth & Rose ordered brick from appellant, some of which had been delivered and were on the ground when Da Moth & Rose defaulted, and the school board took charge of the material on hand and completed the building. The board selected the brick, as they had the right to do, but did not agree to pay for same, nor guarantee the payment. The acts of the school board in taking charge of the material and completing said building upon the default of Da Moth & Rose did not make the board liable for the payment for said brick. The appellant alleges that the school board is responsible, for the reason that the evidence shows that two of the trustees, after the board took charge of the material, tools, etc., in order to prevent appellant from taking steps to secure its debt, promised if they would desist the board would see that it was paid.

E. O. Hughes testified, in reference to said conversations, as follows:

"I had a conversation, after the collapse of this building, with some of the members of the school board of the Hillsboro independent school district with reference to these brick. I talked to Mr. Young and Mr. Bowman. I don't remember whether I talked to any other member except those two, or not. There might have been a number of others, but I don't particularly remember them. My purpose in talking to these gentlemen was to find out whether they were going to stick to the guaranty about those brick after the building collapsed. I went in and told Mr. Bowman there were so many brick on the ground, and we would have to protect ourselves, as they would probably have to go to law with reference to Da Moth & Rose, and I understood that the school board intended to guarantee us, and, if not, I would have to garnishee; and Mr. Bowman said that they had practically obligated themselves for that brick and for us not to do that, for, in all probability, the school could not get that kind of brick finish. We relied on that and did not take any action. After that conversation with Mr. Bowman, those particular brick were used in the walls of the Grammar School Building. I had several conversations with Mr. Young, the secretary of the school board. I had a conversation with him about the brick on the ground. I don't remember how long after the building collapsed and the school board took charge of the contract that I had the conversation with Mr. Bowman. It was about the day following. I had several conversations with Mr. Bowman at different times, about these brick. That was after the school board had taken charge of this contract and was completing the building. I did have a conversation with Mr. Young, secretary of the school board, after the board had taken charge of the building and they were proceeding to finish the building. Mr. Young told

me that he was satisfied that the Elgin-Butler Brick Company would be paid in full. They did not want to pay it right then. He called my attention to the fact that he believed in a certain page on the minutes were resolutions that were a guaranty that the school board would stand behind that brick. He said he would tell me the page number, but I don't believe I ever got it. He stated that, if the board paid us then, it might get them in trouble with other contractors with whom they did not have so great moral obligation. If they paid us at that time, that it might become known among the other contractors that had bills. Mr. Kay and I were acting together as local agents of this company (Elgin-Butler Brick & Tile Company)."

This testimony was not denied or contradicted.

The appellee had a contract with Da Moth & Rose that if they defaulted the board was to take all the material, tools, etc., and complete the building, which they did. Da Moth & Rose were in default, and it was necessary for the board to save itself from loss and to take charge of and complete the building, taking charge of such material as Da Moth & Rose had charge of, which was in strict accord with the building contract.

The acts of Bowman and Young in relation to this matter were not binding on the board, as it never in regular session ratified said conduct, nor the guaranteeing of said bill. It does not definitely appear what remedy appellant would have pursued to collect the bill for the brick. It had no lien on the brick. Da Moth & Rose were the only ones indebted for the payment of the brick, and they were unable to do so.

The evidence does not show the school board liable to appellant, and the judgment is affirmed.