[Civ. No. 4141. Third Appellate District.—February 26, 1931.]

HELEN L. FLEMING, Appellant, v. THE BOARD OF TRUSTEES OF THE OAKVILLE SCHOOL DISTRICT OF NAPA COUNTY et al., Respondents.

Clarence N. Riggins for Appellant.

Wallace T. Rutherford, District Attorney, for Respondents.

MR. JUSTICE THOMPSON (R. L.) Delivered the Opinion of the Court.—This is an appeal from an order denying a petition for a writ of *mandamus* to compel a school board to permit the petitioner to teach in the public school of that district and to require the payment of her salary therefor.

The Board of Trustees of Oakville School District in Napa County consists of H. H. Carpenter, the duly elected clerk thereof; A. L. Lincoln and Peter Del Bondio. All of the members of the board met at the office of the clerk on May 4, 1929, to pass upon the election of teachers for the ensuing year. The petitioner, Helen L. Fleming, had been previously elected and served as a probationary teacher in that district for the school year of 1928–1929. At the meeting of the board on May 4th, it was decided by a majority of the members of the board not to employ the petitioner for the following year. No minutes of this meeting were kept. No formal motion or vote of the members was taken or registered with respect to the employment of the petitioner. That particular subject was, however, discussed orally, and at least two of the members, declared their opposition to her re-election. Following this determination of the board, the clerk then stated in their presence that he would notify the petitioner to that effect. On June 10, 1929, pursuant to the provisions of section

1609, subd. 5 (i) of the Political Code, a written notice, signed by the clerk and one other member of the Board of Trustees, was served on the petitioner, notifying her that her services as a teacher in that school district were no longer desired. This notice is dated June 8, 1929, and reads, in part: "Please be advised that at the conclusion of the present school term your services as teacher in the Oakville school will not be wanted any more."

The appellant asserts there was no formal decision on the part of the school board to terminate the petitioner's employment as a probationary teacher, and that she was therefore automatically re-elected as such teacher pursuant to the statute. Section 1609, subd. 2, *supra*, provides: "Teachers may be elected on or after May second for the next ensuing school year, and each teacher so elected shall be deemed reelected from year to year except as hereinafter specified."

The petitioner held herself in readiness to continue her services as a teacher in Oakville School District, and so notified the trustees. She was not permitted to resume her duties as teacher. This petition for *mandamus* was then instituted in Napa County to compel her reinstatement and the payment of her salary. The court adopted findings adverse to the petitioner on all material issues in the case and rendered judgment accordingly. From that judgment this appeal was perfected.

The sole question for determination on this appeal is whether the action of the Board of Trustees with relation to the termination of the employment of the petitioner was sufficiently formal to bind her. We think the proceedings of the board were adequate. At a timely meeting of the board which was attended by all of its members, the question of the re-election of Miss Fleming was formally discussed. At least a majority of the members orally declared they were opposed to her re-election. In the presence of all the members of the board the clerk then stated he would formally notify the petitioner to that effect. There was no objection to this procedure on the part of any member of the board. The clerk thereafter formally notified her in writing, as required by law, that her services were no longer desired. This notice was signed by a majority of the members of the board, to wit, the clerk and

Mr. Lincoln. It was served within the time required by the statute. Subdivision 5 (i) of section 1609, *supra,* provides: "On or before the 10th day of June in any year the governing board may give notice in writing to a probationary teacher that his services will not be required for the ensuing school year."

We are of the opinion these proceedings were sufficiently formal to bind the petitioner.

■ There is no statutory provision of law requiring the meetings of school boards to be held at any specific time or place. There is no provision requiring the board to formally decide school matters by a vote of aye or nay. There is no provision requiring the minutes of its proceedings to be recorded. Construing a statute similar to that of California involving the validity of meetings held by school trustees, in upholding a contract of the board, it is said in *Brown* v. *School Dist.,* 1 Kan. App. 530 [40 Pac. 826, 827]: "The statute prescribes no special form or manner by which, and no particular place at which the board shall be convened. Nor do we think it was intended or necessary that any formal call should be made for the purpose of legally convening a school district board. It is sufficient if all are present, and if at least two of them agree to make the contract in dispute."

The due determination of a board of school trustees to dispense with future services of a teacher is not invalid merely because the action of the board in that regard was omitted from the records of the meeting. (35 Cyc. 906.)

And in the case of *School Directors* v. *Jennings,* 10 Ill. App. 643, it is said: "The fact that the directors proceeded informally and made no record of their meeting does not affect the validity of what they did toward hiring a teacher."

■ It is true that the statute authorizes only "boards of school trustees" to employ or discharge teachers and transact the business of the school district. It follows that members of a school board acting separately as individuals may not legally bind the district to the obligations of a contract. This principle is determined in *Cloverdale Union High School Dist. of Sonoma County* v. *Peters,* 88 Cal. App. 731 [264 Pac. 273, 276], where it is said: "Where power to employ a teacher is in the board, a valid contract

with a teacher cannot be made by members of the board without a meeting and formal action.''

This formal action, however, has never been held to require strict adherence to the technical procedure approved by ''Roberts' Rules of Order''. Nowhere has it been held that a business proposition must necessarily be decided by a school board by means of the formal vote of the members indicated by the signs aye or nay. Any other method of securing the definite decisions of the respective members is sufficient so long as it enables them to determine whether a majority of the members of the board favor or oppose the proposition. ▮ Nowhere has it been held the proceedings of a school board are invalid unless they are formally recorded. In the absence of a statute requiring this to be done, it is unnecessary. If all of the members of a school board are present, or have knowledge of the meeting and have an opportunity to attend, and a majority of the members of the board, after a formal discussion as to the advisability of employing or discharging a teacher, definitely, separately and finally declare themselves as opposed to the election or discharge of the particular teacher under discussion, in the absence of subsequent action of the board to the contrary, their decision will amount to a valid binding determination of the board just as conclusively as though they had formally voted by means of the ordinary signs of aye or nay. The result is just as definite and certain. (43 C. J. 505, sec. 773.)

This is precisely what occurred at the meeting of the board regarding the matter which is here in controversy. There can be no question in the present case that a majority of the members of the board separately, deliberately and unequivocally decided, at a meeting in which the subject was formally discussed, that they did not desire to re-elect the petitioner for the ensuing year. Mr. Carpenter, the clerk, testified in this regard: ''Q. You are clerk of the Oakville School Board? A. I am. Q. Did the three trustees of the Oakville board meet . . . in your office on the 4th day of May of this year [1929]? A. Yes, they did. . . . Q. And at that time the three trustees were present? A. They were. Q. And you discussed several matters? A. Yes, sir, including . . . the discussion of Miss Fleming's employment. . . . The question was brought about

[regarding the election of] a teacher for the ensuing year and Mr. Del Bondio stated that he had quite a good deal of complaint about Miss Fleming. . . . I also stated that I had complaints. I think it was Mr. Lincoln who said he thought that we should get a new teacher, a different teacher, for the next year, for Miss Fleming's room, in her place, and I stated I thought so, too. I agreed to it. There wasn't any objection raised to it. It was my understanding that it was unanimous and after the discussion had been completed I stated that I would notify Miss Fleming that she wasn't wanted for the next year as a teacher for the school. . . . Q. Were regular motions made and voted upon at the meeting . . . ? A. No, not a regular vote. Matters were discussed and each one would give his opinion and we would agree. . . . Q. When the three trustees had expressed their opinion, why, a decision was made, is that the idea? A. Yes sir.''

The appellant asserts that the employment of the petitioner was not legally terminated for the reason that the clerk was not formally authorized to notify her of the action of the board to that effect. We are of the opinion the proceedings of the board amounted to a legal authorization for the clerk to notify the petitioner her services as a teacher of Oakville school were no longer desired. After the termination of her employment had been agreed upon at the trustees' meeting, the clerk then stated he would notify the petitioner her services were no longer desired. No member of the board dissented from this proposal. This statement was a natural suggestion of the clerk prompted by the decision to terminate her employment. It was a proposal to perform his duty and to fulfill the requirement of the statute. Silence on the part of the members of the board regarding this definite statement as to what the clerk proposed to do amounted to acquiescence and authorization on their part to send the notice. The board had definitely decided to dispense with her services. Moreover the names of two of the trustees were actually signed to the notice. This was itself evidence of an acquiescence and authorization to give the notice. Notifying the petitioner of this action of the board was a mere ministerial duty of the clerk. It required no definite authorization. The law requires it

to be done as a part of the act terminating the employment. The delivery of this written notice to the petitioner on June 10th is conceded.

Regarding the authorization of the board for the clerk to serve this notice, Mr. Carpenter testified: "Will you please state just what was stated at the end of the discussion as to the advisability of hiring Miss Fleming for the ensuing year? A. I said I would have to notify her that her services were not wanted for the ensuing year. Q. You stated that to the other two members of the board? A. I did. Q. That you would do that? A. I did. Q. Was there any objection made by either one of them? A. No objection at all."

From the foregoing evidence it seems clear the services of the petitioner as a probationary teacher in Oakville School District were formally terminated by decision of the Board of Trustees. The clerk duly notified Miss Fleming of such action by tacit authority of the board.

The judgment is affirmed.