DAY, RESPONDENT, *v.* SCHOOL DISTRICT No. 21 OF GRANITE COUNTY ET AL., APPELLANTS.

(No. 7,284.)

(Submitted November 14, 1934. Decided December 4, 1934.)

[38 Pac. (2d) 595.]

208

*Mr. E. T. Irvine* and *Mr. D. M. Durfee,* for Appellants.

*Mr. Ralph E. Williams,* for Respondent.

MR. JUSTICE STEWART delivered the opinion of the court.

The plaintiff, Florence Day, respondent here (a duly qualified teacher), taught the school in district No. 21, Granite county, during the years 1929, 1930, and 1931. She was paid in full at the rate of $100 a month for all services rendered during those years. Payment was made by warrants drawn upon the school district, and signed in each instance by two members of the board. The warrants were not always signed by the same two board members. The school term in this district usually began in the spring of the year, the exact time depending upon the state of the roads and weather, and continued for a period of from five to nine months, depending upon the financial resources of the district and the general weather conditions.

In the latter part of February, 1932, plaintiff received a communication through the mail, advising her that her services as a teacher were no longer required. This notice was signed by Hans Luthje and Mrs. Phelps, two members of the school board. Thereafter, on February 29, 1932, plaintiff notified the board in writing of her willingness to teach for the ensuing term; the term was not beginning that year until July 5. On that day she went to the school and announced that she was there prepared to teach; whereupon she was advised by one of the board members that her services would not be required, and that another teacher was being employed in her place. Another teacher was employed and did teach the school. Plaintiff made repeated requests of the board for payment of the regular salary to which she claimed she was entitled, even though another teacher had been hired and was actually performing the services of teaching the school. The board having refused all her demands for such payment, she instituted this action to recover damages in the amount she would have been entitled to receive as a teacher of the school in that district for the 1932 term.

Plaintiff bases her claim upon the assertion that the notice of dismissal which she received was illegal and void because

it was not authorized by the board, but was the unofficial act of two individuals. In this connection the record discloses that the notice of dismissal was signed by two members of the board without a meeting duly and regularly called for such purposes.

It appears that during the years 1929, 1930, and 1931 plaintiff never had any written contract with the district; in fact, she never did have a written contract. The evidence shows that she was employed by the defendant board; this was established by minute entries of meetings had by the board and by oral testimony. Her employment first began in 1929, as a result of a brief correspondence between herself and the clerk of the district. In January, 1929, she received a letter from the clerk asking her if she "would care to teach our school the coming term." In reply she advised the clerk that she would accept the position. Thereafter, about the 1st of March, 1929, she started teaching. She taught that term and the two following school years.

Because there never was a written contract of employment, as prescribed by law (sec. 1015, Rev. Codes 1921, as amended), the defendant board alleges that plaintiff was never legally employed, and therefore that she was not entitled to any notice that her services were no longer required. In addition to this, the board alleges (and the record discloses) that on July 15, 1932, at a special meeting of the board, duly and regularly called, the act of giving notice to plaintiff of her dismissal was duly ratified.

The matter was presented to the district court of Granite county, sitting with a jury. At the close of all the evidence, both sides agreed by stipulation that the jury might be discharged and the matter decided by the court. The court made its findings and conclusions of law, finding all of the issues in favor of the plaintiff and against the defendants. Judgment was entered for the plaintiff. Defendants presented a motion for a new trial, which was denied; they then appealed from the judgment.

Although the defendants have assigned several specifications of error, there are really but two questions presented for determination by this court, viz.: (1) Was plaintiff entitled to a notice of her dismissal, as provided in the Teachers Tenure of Office Act (sec. 1075, Rev. Codes 1921, as amended)? And (2) was the notice which she received in February, 1932, a sufficient legal notice that her services were no longer required?

Section 1075, Revised Codes of 1921, as amended by Chapter 87, Laws of 1927, provides in part as follows: "After the election of any teacher or principal for the third consecutive year in any school district in the state, such teacher or principal so elected shall be deemed re-elected from year to year thereafter at the same salary unless the board of trustees shall by majority vote of its members on or before the first day of May give notice in writing to said teacher or principal that he has been re-elected or that his services will not be required for the ensuing year. * * * "

It is admitted that plaintiff taught the school for three years ▮▮▮▮▮ immediately preceding the school term for the year 1932. Defendants argue that she cannot avail herself of the above statute because her employment as a teacher was never based upon any formal contract, as prescribed by section 1015, Revised Codes 1921, as amended by Chapter 122 of the Laws of 1931. That statute reads in part as follows: "Every school board unless otherwise specially provided by law shall have power and it shall be its duty: * * * 2. To employ or discharge teachers, * * * and to fix and order paid their wages; provided, that no teacher shall be employed except under resolution agreed to by a majority of the board of trustees at a special or regular meeting; not unless such teacher be the holder of a legal teacher's certificate in full force and effect. All contracts of employment of teachers, authorized by proper resolution of a board of trustees, shall be in writing and executed in duplicate by the chairman and clerk of the board, for the district and by the teacher."

Plaintiff contends that this section does not require all teachers to have a written contract of employment; she argues that

it has application only to those teachers who do not have a legal teacher's certificate. It is not necessary for us to pass upon the merits of this contention. We may assume that a written contract is contemplated by the section in every case. For the purposes of this case we may concede, without deciding, that under section 1015, as amended, supra, plaintiff might have been summarily dismissed at any time during the years 1929, 1930, and 1931, on the ground that she was not legally employed because no formal written contract had been made. The fact remains that defendants accepted and enjoyed the benefits of the services rendered by plaintiff in her capacity as a teacher. They gave their acquiescence to her employment in that position. Indeed, in issuing warrants to her in payment for her work, it might be said that they actively acquiesced, to the point of ratifying her employment as a teacher. (24 R. C. L. 615.)

Where a contract is informally made with a teacher, the board may later ratify the contract, and the ratification is equivalent to a full compliance with the necessary formalities, and when this is done it renders the contract valid from its inception. (*Ryan* v. *Humphries,* 50 Okl. 343, 150 Pac. 1106, 1108, L. R. A. 1915F, 1047; 24 R. C. L. 615; *Graham* v. *School District,* 33 Or. 263, 54 Pac. 185; *School District* v. *Stone,* 14 Colo. App. 211, 59 Pac. 885; *School District* v. *Wood,* 32 Idaho, 484, 185 Pac. 300; *Parrick* v. *School District,* 100 Kan. 569, 164 Pac. 1172.)

Accordingly it has been held that, "if one, without authority, enter upon the duties as teacher in a public school, and the district accepts the services, * * * the teacher may recover for the services rendered upon a *quantum meruit.*" (Voorhees on Public Schools, p. 146; *Scott* v. *School District,* 67 Vt. 150, 31 Atl. 145, 27 L. R. A. 588.) This rule is based upon the theory that a district should not be permitted to avail itself of the fruits of the teacher's labor and then refuse to pay for it. (24 R. C. L. 615.) The same reasoning would seem to apply in the instant case with equal, or even greater, force. A teacher's right to recover compensation in

such case is based upon contract, but her right to the status as a permanent teacher under the Tenure Act is based solely upon the terms of the Teachers Tenure of Office Act. (See *Buckbee* v. *Board of Education*, 115 App. Div. 366, 100 N. Y. Supp. 943; *Fidler* v. *Board of Trustees*, 112 Cal. App. 296, 296 Pac. 912.)

We are unable to find anything in section 1075, as amended, supra, that would justify depriving plaintiff of the benefits conferred thereby. When she showed that she had been elected by the board, that she had taught three consecutive years immediately preceding the year 1932, and that she possessed the other requisite qualifications prescribed by law, she brought herself within the meaning of the statute and was entitled to the privileges and benefits thereof, including a legal and timely notice. She should not be deprived of these rights by reason of the fact that the defendant board, in failing to give her a written contract, had failed to do its duty. "A board by abstaining from * * * doing its duty, cannot set up its own wrong in defense of an honest claim." (Voorhees on Public Schools, p. 145.)

Defendants place considerable reliance upon the case of *Taggart* v. *School District No. 1 of Multnomah County*, 96 Or. 422, 188 Pac. 908, 1119. In that case the Oregon court held that, by the terms of their "Permanent Tenure Act," its application was restricted to teachers "regularly appointed"; and that its benefits could not be claimed by one who did not have a contract in writing, because a written contract was essential to constitute a "regular appointment" within the meaning of the Act. Our statute (sec. 1075, as amended) contains no such specific language as "regularly appointed." Its language is of a more general nature, viz.: "After the election of any teacher or principal for the third consecutive year." Therefore, the Oregon case cannot be regarded as persuasive here.

Defendants insist that the word "elect," as used in section 1075, as amended, must be construed as being synonymous with the word "employment," used in section 1015, as

amended, and that the former section refers to and depends upon a compliance with the latter. We find no merit in this contention. If that had been the intention of the legislature, it could easily have used the word "employed" in section 1075, instead of the word "elected."

We are of the opinion that in February, 1932, plaintiff occupied the status of a teacher in contemplation of the legislature when it declared in section 1075, supra, that, where a teacher has been elected for three consecutive years in any school district, she shall be "deemed reelected from year to year," unless the notice therein provided for shall have been given. It follows that she was entitled to a notice of her dismissal in accordance with the provisions of that Act. (*McBride* v. *School District*, 88 Mont. 110, 290 Pac. 252.)

This brings us to the question whether the notice which plaintiff received in February, 1932, was a sufficient notice of dismissal. Section 1006, Revised Codes 1921, provides in part as follows: "No business transacted by the board shall be valid unless transacted at a regular or special meeting thereof." Section 1075, supra, provides that, if the services of a teacher are sought to be ended by dismissal, "the board of trustees shall by majority vote * * * give notice in writing to said teacher," etc. A "majority vote," of course, means a formal vote taken at a meeting of the board, so as to enable the clerk to make a record of its action. It does not mean a meeting of minds of two of the three members constituting the board, on any question had in casual conversations at their homes and when all of them were not present, as seems to have been the case here. The action taken by trustees Luthje and Phelps in notifying plaintiff of her dismissal was not the result of any action taken by a majority vote of the members of the board at any regular or duly called special meeting thereof. There was a manifest failure on the part of the board to comply with the provisions of sections 1006 and 1075, above quoted.

In the case of *Williams* v. *Board of Commissioners*, 28 Mont. 360, 72 Pac. 755, 756, this court, in speaking of the powers and

duties of a board of county commissioners, used language which is very pertinent here. It said: "To bind the county by its contracts, it must act as an entity, and within the scope of its authority. Its members may not discharge its important governmental functions by casual sittings on drygoods boxes, or by accidental meetings on the public streets; and its chairman, unless lawfully authorized by the board to do some act, or acts, has no more power than has any other member of the board. The statutes do not vest the power of the county in three commissioners acting individually, but in them as a single board; and the board can act only when legally convened." This doctrine has been consistently followed and applied by this court with respect to acts done by boards of county commissioners. (*Smith* v. *Zimmer*, 45 Mont. 282, 125 Pac. 420; *State ex rel. Urton* v. *American Bank & Trust Co.*, 75 Mont. 369, 243 Pac. 1093.)

With respect to the application of such a rule there is no logical distinction between a board of county commissioners and a school board. Indeed, this court has already held that the same principle is applicable in the case of a school board. In *O'Brien* v. *School District No. 1*, 68 Mont. 432, 219 Pac. 1113, 1114, it was held that a "school district is a public corporation (sec. 1022, Rev. Codes 1921), with limited powers (*Finley* v. *School District No. 1*, 51 Mont. 411, 153 Pac. 1010). Its business is transacted by a board of trustees (section 1020), and among the powers expressly conferred upon the board is the power to employ or discharge teachers. * * * To give validity to the business of the board it must be transacted at a regular or special meeting (sec. 1006), and the trustees must then act as a board." (See, also, *Le Clair* v. *School District No. 28*, 74 Mont. 385, 240 Pac. 391.) This is in conformity with the general rule followed in other jurisdictions. (See *Board of Education* v. *American Nat. Bank*, 135 Okl. 253, 275 Pac. 285; 56 C. J. 296 and 337, and cases there cited.)

In accordance with the foregoing authorities, we are forced to the conclusion that the notice in question here was invalid

and ineffective for the purpose of dismissing the plaintiff. It did not constitute a legal notice to her that her services were no longer required.

The fact that defendants held a special meeting on July 15, 1932, and ratified the act of sending the notice of dismissal, does not change the situation in the least. If such ratification had been accomplished prior to May 1, 1932, then a different result might obtain. We need not decide what the result would have been in that event.

Having found that plaintiff was entitled to a notice of dismissal before May 1, 1932, and that no legal notice was ever given by defendants, it follows that the judgment of the district court is correct.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.