[Civ. No. 5560.   Third Appellate District.—July 9, 1936.]

EMILIA J. BARNHARDT, Respondent, v. C. T. GRAY et al., Appellants.

M. C. Kerr and A. M. Mull, Jr., for Appellants.

A. B. Reynolds and S. H. Jones for Respondent.

PLUMMER, J.—This cause is before us upon an appeal by the respondents from a judgment of the Superior Court of the State of California, in and for the County of Plumas, awarding the plaintiff the sum of $1600 and directing that she be reinstated as a permanent teacher in the Laws School District in the County of Plumas.

The record shows that on or about June 14, 1930, the petitioner was employed by what is now known as Laws School District of Plumas County, by written contract, as a teacher of elementary grades therein. The contract contained these words: "a permanent employee". In May, 1931, the petitioner was reemployed in the same capacity for the ensuing year, by a contract containing a provision that she was classified as a "permanent employee". The school where the petitioner was employed to teach had a regular daily attendance of less than 850 pupils. The school district was represented at all times by a board of trustees, consisting of three members. For the following two years

it appears that the plaintiff acted as a teacher in the same school, the only change being that her compensation was somewhat reduced. For the two years just mentioned no contract existed between the petitioner and the respondents. The record shows that during those two years the school board never, as a school board, had a meeting. All the business of the district appears to have been conducted by trustees named English and Hartley, who at different casual conversations agreed upon what they should do. The record also shows that these two trustees entertained the idea that the petitioner had been classified as a permanent teacher. During the two years just mentioned the petitioner was not employed as a teacher by any regular action of the board of trustees. In fact, it is shown that the board of trustees, as a board, never employed anyone, and that the board did not at any time during the two years in question, ever act as a board.

Following some changes in the personnel of the board of trustees the record shows that in May, 1934, a regular meeting of the Board of School Trustees of Laws School District was held, and at this meeting a resolution was passed and signed by all the members of the board dispensing with the services of the petitioner as a teacher in Laws school. No question is made that notice of this resolution was served upon the petitioner as provided by the School Code. Following the receipt of this notice the petitioner instituted this proceeding for a *mandamus* to determine her status as a permanent teacher, and also to recover salary. The trial court entered judgment in favor of the petitioner, as we have stated, and from this judgment the respondents appeal.

Section 5.501 of the School Code became effective August 14, 1931 (Stats. 1931, p. 1394), at a time when the petitioner had not attained the status of a permanent teacher in the Laws school district. That section, added in 1931 to the School Code, required affirmative action on the part of the school board to classify a teacher as a permanent employee, which action cannot be taken until after the teacher has completed three consecutive school years in a position or positions requiring certification qualifications and is reelected for the next succeeding school year. In other words, the teacher must have been elected four separate and distinct times before such classification can be made.

■ The words contained in the two contracts under which petitioner taught for two years, purporting to employ or classify her as a permanent teacher, were simply surplusage. The trustees had no authority to enter into any such contract. The School Code conferred no such powers upon the board of trustees. All those contracts amounted to was the giving to the petitioner of the right to teach in Laws school district in the elementary grades during the two school years covered by the contracts. ■ The record shows that during the two succeeding years the petitioner was not either regularly, or we may add not legally, elected a teacher of the Laws school district, but having taught school during those two years and rendered services to the district, under the authorities herein cited she was entitled to the compensation which the record shows she received.

■ Section 5.400 of the School Code gives authority to boards of school trustees to employ teachers requiring certain qualifications. Outside of this section, individual members of school boards have no power whatever to employ teachers. In order legally to employ a teacher there must be what the law terms a regular or special meeting of the board of school trustees, not simply casual conversations of two of the members of the board who chance to meet either upon the public streets or at some other convenient place. It necessarily follows that any action taken by individual members of the board of trustees, under such circumstances, is ineffectual to confer either authority or status upon a teacher (*Cloverdale Union High School District* v. *Peters*, 88 Cal. App. 731 [264 Pac. 273]), citing authorities to the effect that a valid contract of employment cannot be made by individual members of school boards without a meeting and formal action. ■ Two trustees, as we have stated, casually meeting upon the street or elsewhere, constitute neither a regular nor a special meeting of the board. The law provides what constitutes a meeting and how it shall be held. Special meetings may be held upon call after notice has been given to all the members of the board, or if all the members of the board are present, a special meeting may be had without any previous notice.

■ During the third and fourth years while the petitioner acted as a teacher for the Laws school district, no record was kept by the board of trustees of any of its pro-

ceedings, as no meeting was held, nor was any record kept of what the two trustees individually determined upon doing. Section 2.835 of the School Code specifies that it is the duty of the clerk to call meetings of the board at the request of two members, and to act as clerk of the board and keep a record of its proceedings, and an accurate account of the receipts and expenditures of school moneys. We find no section of the School Code requiring any formality of the proceedings after the board has been assembled, but the code does require that the board must act as a board and not as individual members.

The case of *Fleming* v. *Board of Trustees of the Oakville School Trustees of Napa County,* 112 Cal. App. 225 [296 Pac. 925], while deciding that the proceedings of a board of school trustees need not be formal, or according to any set prescribed procedure, it does not decide, and nothing in the opinion can be construed to hold that any proceedings or conclusions or actions of individual members, outside of a meeting of the board of trustees acting as a board, can be either legal or binding upon the school district.

The respondents rely upon the case of *Briney* v. *Santa Ana High School District,* 131 Cal. App. 357 [21 Pac. (2d) 610], and call our attention to the following language found in the opinion: ''It is admitted that the board of education at no time during the employment of respondent took any formal action to classify her other than by the execution of her contracts. It is apparent that the same condition existed as to the classification of other teachers in the appellant high school district during the same period. Under this state of facts, respondent having accepted her contract, rendered her services for the year in question, and having been paid her compensation by the school district after the contract had been filed with the superintendent of schools in Orange County and among the records of the district, and wherein it was stated that she was classified as a permanent employee, is the district estopped from now denying that she was classified as a permanent employee? We think the answer to this question must be in the affirmative.'' This case, however, is readily distinguishable from the circumstances presented for our consideration. In the Briney case the board of trustees, by a written contract, at a time when it had the power to classify the petitioner as a permanent

teacher, recited in its contract, after the teacher had taught the requisite number of years, that she was classified as a permanent employee. As stated in the opinion it was within the power of appellants to give the petitioner the classification of a permanent employee at the time the contract was issued and delivered to her. No formal action of the board of trustees was held to be further necessary. The issuance of the contract, at a time when the board had power so to do, and delivering same to petitioner was of the same force and effect as though formal action had been taken, and estopped the board from denying that the petitioner had been so classified. Nothing of that kind appears in the case before us. The board of trustees never took any such action. What was done in the issuance of contracts for the first and second years was simply meaningless. At a time when the board of trustees, under section 5.501 of the School Code, in this case, would have had power to classify the petitioner as a permanent teacher, no action was taken by the board.

It may be further observed that the Briney case was based upon the provisions of section 5.500 of the School Code, which specified at that time that the classification might be made at the end of two years or three years of successful service as a probationary employee, and at the end of the third year, if elected for a fourth year, became automatically entitled to such classification. The section controlling this case contains no such provision. It is a matter of discretion with the trustees, and not with the individual members thereof.

The case of *Sherman* v. *Board of Trustees of Siskiyou Union High School District*, 9 Cal. App. (2d) 262 [49 Pac. (2d) 350], while citing a number of cases presented for our consideration by the respondent, really decides but one vital question, and that is that a board of trustees cannot, by subterfuge, avoid the provisions of a School Code. Nothing in that opinion has any bearing upon the issues presented.

The decision in the case of *Day* v. *School District No. 21 of Granite County et al.*, 98 Mont. 207 [38 Pac. (2d) 595], decided by the Supreme Court of Montana, while affirming the right of a teacher irregularly or illegally employed who renders services as a teacher, entitling her to compensation for services rendered, and when elected, after teaching a certain length of time, entitling her to notice as provided by the statutes of that state whenever her services are dispensed with,

also draws a distinction between the estoppel which will be invoked against a school district when it attempts to avoid payment for services rendered and the acquiring of a status as a permanent teacher which can only be acquired under the Teachers' Tenure Act of that state.

We find nothing in the case of *Ryan* v. *Humphreys*, reported in 50 Okl. 343 [150 Pac. 1106, L. R. A. 1915F, 1047], and the extensive annotations, which would support the estoppel attempted to be set up as against the district by the petitioner in this case. Among the notes attached to the above-mentioned case we do find decisions to the effect that conversations between directors concerning the employment of a teacher, at casual meetings, does not bind the district. The notes to that case also uniformly hold that when it is admitted that a teacher has rendered services such as for a district, whether regularly or irregularly employed, those services must be paid for. Under such circumstances it is a question of *quantum meruit*, not of estoppel.

The case of *McCormick Lumber Co.* v. *Highland School District,* 26 Cal. App. 641 [147 Pac. 1183], is based upon the foundation that when a school district has received material or services of value, payment therefor must be made.

Sections 2.985, 2.986 and 2.987 of the School Code require all business of boards of trustees to be transacted at regular or special meetings, notice being required of special meetings unless all of the members are present. Classification of permanent teachers, where the school attendance is less than 850 pupils, can only be made after the teacher has successfully completed three successive school years, and has been re-elected for a fourth. That two members of the board thought the petitioner had been classed as a permanent employee by their actions, when the board had no authority so to act, and not that the petitioner was classified as such teacher at the expiration of the third year, and also that no action was taken which would bind the district, is shown by the following excerpts of the testimony appearing in the transcript: "Mr. English testified: Q. Now in 1933—who constituted the board the following year, 1933–1934? A. Well, the same members (i. e., Messrs. Gay, English and Hartley). Q. All right. Now state whether or not Mrs. Barnhardt was employed as a teacher for the term 1933–1934. A. She was employed for 1933–1934. Q.

Now, did you have any—you and Mr. Hartley and Mr. Gay, constituting the members of the Board of Trustees of that district—have any formal meeting at all that year? A. We did not. Q. Did you and Hartley discuss the proposition of her permanency in reference to its relationship with the reduction of salary? A. We did; that's one of the things we discussed. It wasn't our idea that in making a reduction in the salary it would in any way interfere with her status as a permanent teacher. Q. Then, in 1933, in this conversation with Mr. Hartley, did he agree with you that she was a permanent teacher? A. He did, absolutely. Q. What did Mr. Hartley say in reference to the status of Mrs. Barnhardt as a permanent teacher when in 1933 you discussed with him the proposition of the reduction of her salary from $1800.00 to $1600.00? A. He wanted her to retain her status. Mr. Kerr: We object as to what he wanted. A. All right; he said he wanted her to be retained and retain her status as a permanent teacher regardless of making any reduction in her salary. Mr. Hartley testified: Q. Was there any discussion between you and Mr. English in reference to the employment of a teacher for the ensuing term, the term commencing in 1933 and ending in 1934? A. Yes, sir. I don't remember when it was, but we had practically the same conversation (i. e., the same as was had between Mr. English and Mr. Hartley the previous year in which Mr. English told Mr. Hartley that Mrs. Barnhardt was a permanent teacher). Q. Well, was it—it was before the commencement of the school term in 1933? A. Yes, it was. Q. But you did have a discussion . . . with Mr. English—now I want you to give us, as near as you can recall, the substance of that conversation. Mr. Kerr: What time are you referring to now? Mr. Reynolds: Some time in the spring of 1933; the spring or early summer after the completion of the school term ending in May, 1933, or the commencement of the fall term. A. Well, we talked about hiring a teacher and it was very agreeable with me that we hire Mrs. Barnhardt for the next term. I don't remember the date, but it was, of course, before the school opened. Q. At that time was anything said between you and Mr. Hartley (sic English) as to her classification as a permanent teacher? . . . A. It was discussed in this way, that I thought that she was a permanent teacher at all times. Q. In this conversation between you and Mr.

English, was anything said in reference to her being a permanent teacher? A. Well, yes. Mr. English said she was a permanent teacher and I agreed with him as far as I knew. I thought she was a permanent teacher. Q. You approved of that? A. Yes, sir. Q. And it was your understanding that she was employed to teach the term commencing in 1933 and ending in 1934, and that she was classified and was to become a permanent teacher? A. Yes, sir. . . . Mr. English testified: Q. Did you and Mr. Hartley and Mr. Gay, as members of the Board of School Trustees, during that year have any regular or formal meeting? A. We did not. Q. Did you ever take the proposition of her employment and status as a teacher up with Mr. Gay? A. No, I did not. Mr. Gay did not care to enter into or have anything to do with the operations of the present Board of Trustees at that time so Mr. Hartley and I went along and handled the thing as we saw fit. Q. Was there, while you were clerk of that Board, ever a meeting of the Board of Trustees? A. No, we never had a regular meeting. Q. And never kept any minutes of any kind whatever? A. No minutes, other records. Q. Why didn't you have a meeting and make a record of this, as required? A. We thought as, handling it as we did, no question would come up. Q. You thought, or figured that you and Hartley could arrange this and not have anything to do with Gay, and figured that Mrs. Barnhardt could be established? A. That was the idea, that she could be established as a permanent teacher. Q. And that you could do that without a meeting or without any records? Mr. Hartley testified: Q. Now, that year did you, as a Board, have what is known as a regular or formal meeting? A. We never did. Q. During all these conversations (with Mr. English), Mr. Hartley, Mr. Gay, the other trustee, was not considered or asked to participate in any way, was he? A. Not by me. Q. In any of these conversations there was no regular meeting? A. No, sir. . . . Q. Mr. Gay, the other trustee, during the time you were there was not taken into the conversation? A. No. Q. Did you at any time make any order, as a Board of Trustees, classifying Mrs. Barnhardt as a permanent or temporary teacher? A. No, we did not. Mr. Gay testified: Q. Did you afterwards assume the office of a trustee of that district and attempt to have a meeting? A. I did. . . . Q. And were you able to get a meeting? A. I was

not. Q. And did you, as a member of the Board of Trustees, with any of the other trustees, enter into any contract for the hiring of a teacher for the ensuing year? A. I did not. Q. Up to that time (of Gay's appointment) were there regular meetings held or records of the proceedings kept by the Board of Trustees? A. Not that I know of.''

What two individual members of the board of school trustees may have thought does not bind the district. It is what the board of trustees as a board of trustees *does* that binds the district.

We see no escape from the conclusion that nothing was done by the Board of Trustees of Laws School District which estopped the board of trustees from taking the action which it did in May, 1934, dispensing with the services of the petitioner as a teacher in Laws School District.

The judgment is reversed.

Thompson, J., and Pullen, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 4, 1936.